THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL LOUISVILLE, Defendant-Appellant.

First District (3rd Division)   No. 1—90—3595

Opinion filed November 18, 1992.—Rehearing denied March 9, 1993.

Rita A. Fry, Public Defender, of Chicago (Lynn Hubanks Miller and Robert Guch, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen M. O'Neill, and Michael B. McHale, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, Samuel Louisville, was convicted of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)) and sentenced to six years' imprisonment. On appeal, defendant asserts that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) he was denied due process because the knife used in the crime was not offered as evidence at trial; (3) he was denied due process because a repossession notice was attached to a document that went to the jury room; (4) he was denied due process because a photograph showing his knife and ski mask was admitted into evidence, although not shown to the jury; (5) he was denied due process because the State made improper comments during the trial and closing arguments; (6) he was prejudiced by testimony of the police radio messages concerning the robber's description; and (7) his motion for substitution of judge was improperly denied. We affirm the conviction.

On January 25, 1988, Eugene Tellez was working alone at Jack's Mobil gas station at 162nd and State Streets in South Holland. Defendant came into the station about 8 p.m. Around the same time, a woman entered the station, paid for gas, and left. After defendant gave Tellez $2 for gas, Tellez told him that he would have to stop the pump himself because it could not be stopped from inside. At that time, Tellez observed defendant for one to two minutes.

When defendant pumped over $5 worth of gas, Tellez went outside to tell defendant that he had gone over the $2. Since Tellez was within 10 feet of defendant's red Chevette and the outside area was well lit, Tellez could see defendant's face. Before leaving, defendant paid for the extra gas.

Around 8:30 p.m., Tellez saw defendant return to the station, park his car on the side of the station, and enter the station, complaining that it was cold outside. He asked for a pack of Virginia Slims cigarettes and gave money to Tellez, who was standing behind the counter. Tellez gave defendant the cigarettes, put the money on top of the cash register, and opened it to make change. At that point, defendant tried to grab Tellez with his left hand and pulled a knife from inside his pants with his right hand. Tellez pulled away quickly and fell to the floor, telling defendant, "Take anything you want, I don't care what you do, just leave me alone."

Tellez watched defendant reach over the counter and take money from the open cash register. When defendant noticed Tellez looking at him, he warned, "[I]f you call the police, I'll shoot you, I will shoot you." Tellez ran out the back door and behind the building. From there, he watched defendant leave the gas station. When defendant saw Tellez watching him, he again threatened that he would come looking for Tellez if he called the police. Defendant got into his car and drove southbound on State Street.

Tellez went into the station, where he saw the open cash register and money lying on the floor. It was later determined that approximately $307 had been taken. Tellez called the police. When they arrived, Tellez described the robber as a black man, approximately 6 feet 2 inches tall, and 220 pounds, wearing a tan leather jacket and a Chicago Bears baseball cap. Tellez described the knife as a hunting knife with a black handle and a six- to eight-inch blade. He also told the police that the robber was driving a red Chevette, traveling south on State Street.

About 30 minutes later, defendant was brought to the gas station, where Tellez identified him as the robber. Later that evening, Tellez

went to the police station and identified the Chevette. The knife used in the robbery and a pack of cigarettes were on the car seat.

Officer Michael Becka of the South Holland police department testified that he interviewed Tellez at the gas station. At 8:45 p.m., he transmitted a radio message that there had been an armed robbery at the gas station and an undetermined amount of currency had been taken. The message described the robber as a large-built black man, 6 feet 2 inches tall, with a six- to eight-inch survival-type hunting knife, driving a red two-door Chevette last seen going southbound on State. Three to five minutes later, in response to requests for more information, Officer Becka transmitted a clothing description, including the Chicago Bears baseball cap.

Officer Brad Borys of the Lansing police department testified that he was at the intersection of Torrence Avenue and 173rd Street, in Lansing, when he saw defendant driving a car that matched the description from the police radio message. Defendant was turning around in a gas station. Instead of stopping for gas, defendant went east on 173rd Street, then north on Torrence Avenue.

Borys followed defendant, staying one car length behind and one lane to the right of defendant's car. Borys stated that he pulled alongside defendant's car, where he observed defendant's face and clothing. Noticing that defendant was wearing a Chicago Bears cap, Borys contacted the South Holland police and asked for a clothing description. As Borys was getting the additional information, defendant abruptly turned left into a Wendy's restaurant without using the center turn lane. Borys pulled into a driveway about 100 feet away and watched defendant walk into the restaurant.

When back-up arrived, Borys went into the Wendy's restaurant and arrested defendant. Borys walked over to defendant's car and looked through the window. On the passenger seat, he saw a knife matching the radio message's description and an unopened pack of Virginia Slims cigarettes. No money was recovered from the car, but a tan leather jacket was found in the car.

Defendant testified that he was on vacation from his job as a crane operator on January 25, 1988. According to defendant, he used a knife to strip rolls of paper at work and he usually kept the knife in his car when he was not at work. Around 8 p.m., defendant went to the Mobil gas station. While he was pumping gas, Tellez came out of the station, leaned over the car, and told him he was going over the dollar amount. Defendant stated that he had not yet paid Tellez any money. He said he was planning to buy $5 worth of gas, but went over that amount.

At that time, a woman drove into the station and went inside. According to defendant, he followed her into the station and saw Tellez give her a small brown paper bag. Defendant then paid for the gas and bought a pack of cigarettes. When defendant left, Tellez and the woman were still inside the station. In rebuttal, Tellez denied giving a brown paper bag to a woman on the night of the robbery.

Defendant then testified that he stopped at two nearby car dealerships before going to the Wendy's restaurant, where he was arrested. He admitted having a knife in his car, having $9.20 on him, and wearing a tan leather jacket when he was arrested. He denied all other allegations, including that he turned around in the gas station at 173rd Street and Torrence Avenue.

On cross-examination, the State asked defendant whether he had made any post-arrest statements. Defendant replied that he spoke to the police and to some lawyers. On redirect examination, defendant stated that he told the police, "I haven't robbed anybody."

The jury returned a guilty verdict and defendant was sentenced to six years' imprisonment.

Defendant asserts that the State did not prove him guilty of armed robbery beyond a reasonable doubt since his actions after leaving the gas station were inconsistent with guilt. We disagree.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) It is not the reviewing court's function to retry defendant when considering a challenge to the sufficiency of the evidence of his guilt. *People v. Jimerson* (1989), 127 Ill. 2d 12, 43.

This case rested on the credibility of the witnesses. Determinations of credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are exclusively within the province of the jury. (*Jimerson*, 127 Ill. 2d at 43.) Any conflicts in the testimony are to be resolved by the jury. (*Collins*, 106 Ill. 2d at 261-62.) Where the guilt or innocence of the defendant depends on the credibility of conflicting testimony, the jury's findings should not be disturbed on review unless they are palpably against the manifest weight of the evidence. *People v. Jacquith* (1984), 129 Ill. App. 3d 107, 113.

Where the identification of the defendant is at issue, the trier of fact is not required to accept the defendant's alibi testimony over the positive identification by the victim. (*People v. Palmer* (1989), 188 Ill. App. 3d 414, 420.) The testimony of a single witness, if positive and credible, is sufficient for a conviction even in the presence of con-

tradictory alibi testimony. (*Palmer*, 188 Ill. App. 3d at 421.) The test of a positive identification is whether the witness had an opportunity to view the offender for a sufficient length of time under conditions adequate for observation. *Palmer*, 188 Ill. App. 3d at 421.

The jury had the opportunity to view both Tellez and defendant while they were testifying and to determine their credibility. Tellez positively identified defendant as the man who robbed him and defendant's knife as the one used during the robbery. Tellez had at least four opportunities to view defendant at close range in a well-lit area. When the police arrived, Tellez gave them descriptions of the robber's physical characteristics, clothing, and car.

Next, defendant asserts that he was denied due process of law because the knife used in the crime was not offered as evidence at trial; the police confiscated and kept the knife found in his car; the State used the knife as a major issue at trial; and the police or the State negligently lost the knife, depriving defendant of the opportunity to make in-court demonstrations of how he used the knife at work and how Tellez could not have observed the knife's details if it had been pulled from defendant's waistband in the manner alleged.

To support his position, defendant relies on *People v. Steptoe* (1976), 35 Ill. App. 3d 1075, 1079, which stated that sometimes due process requires a new trial if the police lost confiscated evidence through their negligence and deprived a defendant of the opportunity of determining whether the evidence might be helpful in his defense. *Steptoe*, however, supports the State's argument, not defendant's. The *Steptoe* court upheld the defendant's conviction despite the fact that police failed to produce a note used in an attempted robbery. 35 Ill. App. 3d at 1078.

■ We reject defendant's argument. Due process violations are found when the prosecution purposefully suppresses available evidence favorable to the defendant. (*Steptoe*, 35 Ill. App. 3d at 1079.) Unless a defendant shows bad faith by the police, failure to preserve potentially useful evidence is not a denial of due process of law. (*Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337.) There was no evidence of bad faith by the police or the State in not presenting the knife at trial.

Any duty the Constitution imposes on the prosecution to preserve evidence must be limited to evidence that might be expected to play a significant role in the defendant's defense. (*California v. Trombetta* (1984), 467 U.S. 479, 488, 81 L. Ed. 2d 413, 422, 104 S. Ct. 2528, 2534.) Defendant did not show that he expected the knife to be significant in his defense.

The knife not being presented at trial did not prejudice defendant because Tellez testified that he saw the knife and positively identified it in a photograph of defendant's car showing the knife on the front passenger seat. Furthermore, any demonstrations of how the knife was used or would be taken from defendant's waistband were irrelevant. Thus, there was no due process violation.

■ Next, defendant asserts that he was denied due process because a repossession notice was improperly attached to the abstract of title to his car. Since the notice went to the jury room, defendant claims that it could have caused the jury to improperly question defendant's credibility or to improperly infer a motive from that document.

Defendant waived this issue. The exhibit was tendered to the defense counsel in court, defense counsel looked at it, and stated that he had no objection to its admission. If defense counsel was surprised by the documents and needed more time to review them, the proper recourse was to ask for a recess or a continuance at that time. Generally, the failure to seek a continuance waives a claim of error based on surprise. (*People v. Jackson* (1990), 198 Ill. App. 3d 831, 847; *People v. Nelson* (1980), 92 Ill. App. 3d 35, 45.) Since defense counsel looked at the exhibit and overlooked the document and stated that there was no objection, defendant cannot now claim unfair surprise and prejudice.

■ Next, defendant asserts that he was denied due process because a photograph showing defendant's car interior with a knife, cigarettes, and a ski mask was improperly admitted into evidence. Defendant contends that the photograph was not relevant or material because it was not probative of the issue involved, which was whether he used the knife to commit the armed robbery when he purchased the cigarettes. Defendant states that he never denied having a knife or a pack of cigarettes in his car.

Defendant's argument is meritless. It is within the trial court's discretion to determine whether evidence is relevant and admissible, and its decision will not be overturned absent a clear abuse of discretion resulting in manifest prejudice to defendant. (*People v. Hayes* (1990), 139 Ill. 2d 89, 130.) Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *People v. Gonzalez* (1991), 142 Ill. 2d 481, 487-88.

The trial court allowed the State to use the photograph for the purpose of identifying the knife and the cigarettes. It was relevant to corroborate Tellez's identification of defendant by showing the knife

used in the robbery and the pack of cigarettes taken by defendant from the gas station. It was also relevant to corroborate Officer Borys' testimony about seeing those items in defendant's car at the time of his arrest.

Defendant also argues that the photograph was highly prejudicial and inflammatory because it showed a ski mask next to the knife and cigarettes. The very existence of the photograph created suspicion and presumption of concealment in the jury's mind, defendant claims.

It is the trial court's function to weigh the probative value and prejudicial effect of evidence in determining whether it should be admitted. (*Gonzalez*, 142 Ill. 2d at 489; *People v. Eyler* (1989), 133 Ill. 2d 173, 218.) The trial court correctly balanced those considerations. Although the trial court admitted the photograph into evidence, it did not allow the photograph into the jury room or to be passed among the jurors. The jury saw it only briefly from 10 feet away during closing arguments. There was no mention of the ski mask and no evidence that the jury ever saw the ski mask.

■ Next, defendant asserts that he was denied due process because the State improperly commented on his post-arrest silence. Although he made some post-arrest statements, defendant argues that they were not justified as impeachment because they were not inconsistent with his trial testimony. After his arrest, defendant told the police that he did not commit the robbery, but was at the gas station, where he bought cigarettes and gas. At trial, defendant testified that he did not tell the police about the woman to whom Tellez allegedly passed a brown paper bag.

During its closing argument, the State commented that defendant remembered the woman and her car in great detail, but never told the police or the lawyer that he saw Tellez hand the woman a brown paper bag. This argument was intended to invite the jury to infer from defendant's initial silence that his trial testimony was a recent fabrication. (See *People v. Ridley* (1990), 199 Ill. App. 3d 487.) In *Doyle v. Ohio* (1976), 426 U.S. 610, 617, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240, 2244, the United States Supreme Court ruled that silence following recitation of the *Miranda* warnings is always ambiguous because the silence may be nothing more than the accused's exercise of his right to remain silent. The court further ruled that it is fundamentally unfair to permit use of a defendant's silence as impeachment after inducing him to remain silent. *Doyle*, 426 U.S. at 619, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245.

The State argues that there was no *Doyle* violation since defendant did not remain silent after his arrest. Instead, the State maintains that his statements were inconsistent with his trial testimony.

The State's cross-examination of defendant and closing argument comments were improper. Defendant's post-arrest statements were not inconsistent with his trial testimony. Before the prosecution is permitted to comment on the defendant's post-arrest silence, there must be a showing of manifest inconsistency between the defendant's post-arrest statement and his trial testimony. *People v. Smith* (1987), 157 Ill. App. 3d 465, 469.

No such showing was made. Before trial, defendant simply denied committing the armed robbery although he admitted being at the gas station to purchase gas and cigarettes. He did not contradict those statements at trial. Instead, he added that he saw Tellez pass a brown paper bag to a woman.

Since the evidence of defendant's guilt is overwhelming, however, the prosecutor's improper comments did not substantially prejudice defendant and are harmless error. For a trial error affecting a constitutional right to be held harmless, it must be determined beyond a reasonable doubt that the error did not contribute to the defendant's conviction. (*Chapman v. California* (1967), 386 U.S. 18, 23, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 827; *Fahy v. Connecticut* (1963), 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 173, 84 S. Ct. 229, 230.) Considering the totality of the evidence presented, we conclude that a trial without this error would produce no different result. *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29.

Defendant then argues that the State improperly shifted the burden of proof to him during closing arguments. Defendant waived this issue, and we decline to consider it under the plain error rule.

■ Next, defendant asserts that he was prejudiced by the introduction of the police radio messages concerning the robber's description. Citing *People v. Orr* (1986), 149 Ill. App. 3d 348, defendant argues that the police radio message testimony, both as hearsay and as a prior consistent statement, impermissibly bolstered the veracity of the victim's observation of the defendant as the robber. The *Orr* decision, however, is contrary to defendant's position since it reversed the conviction due to the cumulative prejudicial impact of numerous trial errors. (149 Ill. App. 3d at 362.) The *Orr* court stated that there was no prejudicial error in introducing evidence of the police officer's testimony of circumstances surrounding the defendant's arrest because it was an integral part of the narrative of police investigation of the crime leading to the arrest. *Orr*, 149 Ill. App. 3d at 365.

We reject defendant's argument. The content of a police radio message is not hearsay if it is offered for the limited purpose of explaining the reason and manner in which the police conducted their investigation. (*Palmer*, 188 Ill. App. 3d at 423.) A police officer may testify to the contents of police radio communications where such testimony is offered to show that the police officer had probable cause to arrest on the basis of the communication. *People v. Williams* (1978), 62 Ill. App. 3d 966, 974.

■ Finally, defendant asserts that his motion for substitution of judge was improperly denied since the trial court was predisposed to questioning defendant's credibility. Defendant relies on *Tumey v. Ohio* (1927), 273 U.S. 510, 531, 71 L. Ed. 749, 758, 47 S. Ct. 437, 444, which is distinguishable because that judge was paid for his services only when he convicted the defendant, thus violating due process. The Court stated that due process is violated if a judge has a direct, personal, substantial, or pecuniary interest in convicting the defendant. *Tumey*, 273 U.S. at 523, 71 L. Ed. at 754, 47 S. Ct. at 441.

Defendant also cites *People v. Chatman* (1967), 36 Ill. 2d 305, 309, where the court ruled that a defendant has an absolute right to a different judge in a trial on a second charge if the judge indicates during the first trial that he does not believe the defendant. *Chatman* is distinguishable because the judge in that defendant's first rape trial did not allow the State to offer rebuttal testimony because he had already made up his mind. *Chatman*, 36 Ill. 2d at 307.

On October 1, 1990, this case was set for trial. Defendant, who was present in court, told the judge that he had the flu. The trial court excused him to go to the doctor and called a recess until 1 p.m. that afternoon. The trial judge told defendant that without a medical excuse, he would not give a continuance.

At 1 p.m., the defense counsel told the judge that defendant was at the Ingalls Hospital emergency room, waiting to see the doctor. The trial court gave a continuance until the next day. On October 2, 1990, the trial court asked about the status of defendant's illness. At that time, he continued the case until October 9, 1990, due to defendant's illness. On October 9, 1990, the trial court continued the case to October 15, 1990. He stated that he would deny another continuance without medical records and the doctor coming to testify.

On October 15, 1990, defendant filed a petition for substitution of judge for cause. Another judge heard the petition, denied it, and transferred it back to Judge Gierach for trial.

The burden of establishing actual prejudice is on the defendant. (*People v. Vance* (1979), 76 Ill. 2d 171, 178.) A defendant's right to

substitute judges for cause is not absolute, but requires substantiation to ensure that his claim of prejudice is not frivolously made. (*People v. Washington* (1984), 121 Ill. App. 3d 479, 485.) In the absence of proving animosity, hostility, ill will, or distrust towards the defendant, he falls short of establishing actual prejudice that would interfere with a fair determination of his guilt or innocence at trial. *People v. Neumann* (1986), 148 Ill. App. 3d 362, 370.

The trial court did not err in denying defendant's motion for substitution of judge. Defendant did not establish that the trial court had any actual prejudice against him. There was no showing of animosity, hostility, ill will, or distrust toward defendant. *Vance*, 76 Ill. 2d at 181.

Based on the foregoing, the circuit court's judgment is affirmed.

Affirmed.

RIZZI and TULLY, JJ., concur.