THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD HUGHES, Defendant-Appellant.

First District (3rd Division)   No. 1—92—1957

Opinion filed March 30, 1994.

Rita A. Fry, Public Defender, of Chicago (Beth I. Solomon and Bruce Landrum, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan R. Schierl, and Leslie German, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a bench trial, defendant, Edward Hughes, was found guilty of two counts of armed robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—2 (now codified as 720 ILCS 5/18—2) (West 1992)) and sentenced to 15 years' imprisonment. On appeal, defendant asserts that (1) he was deprived of his due process rights because the out-of-court identification was a suggestive one-person showup; (2) he was not proven guilty beyond a reasonable doubt; (3) he was deprived of a fair trial by the testimony regarding a police flash message containing the offender's description; (4) the trial court erred in finding him guilty of two counts of armed robbery where there was only one taking; and (5) his sentence was excessive. Based on the following reasons, we affirm.

Prior to trial, defendant filed a motion to suppress identifications. At a hearing on the motion, Chicago police officer Eugene Kostka testified that he responded to a call of an armed robbery in progress at 1150 West 69th Street, Chicago, at 2:27 p.m. on August 19, 1991. He was present when the victims gave the offender's description and another police officer broadcast that description over the police radio.

Chicago police officer Carter Stall testified that he received a radio message of a robbery in progress at 1150 West 69th Street at 2:25 p.m. Four or five minutes later, he received a description of the offender as "a male black, about 5'6", 150 pounds, wearing a green shirt and a black cap, with two other males." Officer Stall toured the area for 10 to 15 minutes until he saw defendant, who matched the description.

Defendant was leaving 6700 Green Street, which is six to seven blocks from where the armed robbery occurred. Officer Stall escorted defendant, who was not handcuffed, back to the crime scene. As soon

as they entered the store, at about 2:44 p.m., two of the victims looked at defendant, pointed to him, and said, "[T]hat's him."

According to Officer Stall, no one told the witnesses that they had to identify defendant, had to identify anyone, or that someone was coming in for them to look at. Prior to identifying defendant as the offender, the witnesses did not talk amongst themselves.

Officer Stall went back to the area of 6700 South Green Street to conduct a search, but he was unable to find any weapons or proceeds from the robbery. In addition, he never found the other two offenders who had been described in the flash message.

The trial court denied defendant's motion after finding that there was no evidence of suggestiveness or improper procedures used.

At trial, Nadir Abdul Salan testified that he was working at Racine's Food and Liquor Store at 1150 West 69th Street on August 19, 1991. Also in the store were an outside salesperson, an employee, Bennie Westbrook, Westbrook's girl friend, Debbie Hudson, and Salan's brother, Yaser, who was in the basement taking inventory.

Salan described the front entrance as being an outer door and an inner door that are 10 feet apart. Around 2:25 p.m., Salan was at the front door giving the salesperson an order. A man later identified as defendant ran through the outer front door, which was six feet from Salan. He had a gun in his right hand and was wearing a blue shirt, blue jeans, and a black Raider's hat.

Salan stated that defendant entered the store, fired a shot at the ceiling, and told everyone to get on the ground. Although Salan and the salesperson got on the floor, Salan testified that he clearly saw defendant's face from three feet away. Westbrook, who was sitting on the counter, jumped behind the counter and got on the floor.

Defendant then pointed the gun at Salan's head and told him to give him the money he had in his pocket. When Salan responded, "I don't think you trust me to go into my pocket," defendant told him to "shut up." According to Salan, he was looking up at defendant's face as he lay on the floor.

At that point, two other men entered the store, stepped over Salan, and went behind the counter. While the two men were behind the counter, defendant stood over Salan with the gun pointed at Salan's head. Salan saw one of the men go to the cash register and open it. Then, the two men left the store while carrying a brown paper bag containing $2,800. Salan testified that defendant was in the store for about three minutes.

After defendant left, Salan got up and went outside. He saw defendant and the other two men 20 feet away walking east on 69th Street. Defendant turned around and pointed the gun at Salan, who

saw defendant's face for a second. Salan jumped back inside the store when defendant shot the gun twice at him.

The police arrived two to three minutes later. Salan gave them a description of the offender. Besides the $2,800 in cash, Salan determined that five pint bottles of Bacardi rum were also missing.

About 15 minutes later, the police brought defendant into the store. He was wearing the same clothing as during the robbery, but also was wearing a wet, black coat. Salan immediately identified defendant as the offender.

Bennie Westbrook testified that he was working at the store on August 19, 1991. He was sitting in front of the counter at 2:25 p.m. when a man, later identified as defendant, ran into the store. When defendant entered, he was 10 feet from Bennie, who could see his face. Westbrook described defendant as wearing a green shirt, blue jeans, and a Raider's hat.

According to Westbrook, defendant shot a black Beretta gun once into the air as he entered. Westbrook jumped behind the counter and got on the floor. Hudson was also on the floor behind the counter. A different man came behind the counter. The man began fumbling around under the counter, then took some liquor off the shelf. Westbrook noticed that the man was carrying a brown paper bag when he left the store.

Once the men left, Westbrook got up and Hudson called the police. About 10 minutes later, the police brought defendant into the store and Westbrook identified him as the offender.

Defendant testified that he was staying with his aunt at 6700 South Green Street on August 19, 1991. According to defendant, he was home with his aunt and two friends the entire day. When the police stopped him at 2:25 p.m. outside his aunt's house, he was wearing a red and black Bulls hat, black pants, a Saint's jacket, and a dark blue shirt under a wet coat. Defendant stated that he was never in the store that was robbed and denied holding, pointing, or firing a gun inside the store.

The trial court found defendant guilty of two counts of armed robbery. Defendant's motion for a new trial was denied, and the trial court sentenced him to 15 years' imprisonment for each count, to run concurrently.

On appeal, defendant asserts that his motion to suppress identifications should have been granted because the use of the one-person showup was a violation of his due process rights. Defendant contends that the totality of the circumstances shows that the identification procedure was highly suggestive and unreliable because neither witness had a sufficient opportunity to view the offenders.

Since the offender ordered everyone to lie on the ground as soon as he entered the store, defendant concludes that the witnesses were on the ground with their heads down for most of the incident, which lasted about three minutes.

Furthermore, defendant maintains that the very general description the witnesses gave the police indicates that they did not have an opportunity to adequately view the offenders. Not only were the clothing descriptions general, defendant argues, but the witnesses contradicted each other regarding the color of the offender's shirt. In addition, the witnesses failed to provide any information regarding the offender's facial features.

Defendant also argues that the showup was unnecessary for the police to determine whether or not to continue their search for the offenders. Since there were three offenders, the police still had to search for the other two.

In response, the State asserts that the showup was proper and not suggestive because Salan and Westbrook had a clear opportunity to observe defendant; the store was well lit; the offense occurred during daylight hours; defendant was in close proximity to the witnesses during the commission of the crime; and nothing was blocking Salan's view when he saw defendant's face from 10 feet away, then from three feet away. The State also contends that the description the victims gave to the police was detailed; the identification of defendant occurred only minutes after the offense; and the identification was unprompted by the police.

In addition, the State contends that the showup was necessary for the police to determine whether or not to continue their search for the gunman. It is immaterial that the police were still looking for the other two offenders, the State concludes.

■ Although one-person showups are inherently suggestive (*People v. McKinley* (1977), 69 Ill. 2d 145, 151, 370 N.E.2d 1040) and not favored as a means of identification, they are justified under limited circumstances, such as when a witness had an excellent opportunity to observe the offender during the commission of the offense or prompt identification is necessary for the police to determine whether or not to continue their search. *People v. Manion* (1977), 67 Ill. 2d 564, 569-70, 367 N.E.2d 1313.

■ A trial court must determine, under the totality of the circumstances, whether the confrontation was so unnecessarily suggestive that it would lead to an irreparable mistaken identification. (*Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.) This is a two-part test. The first part involves an inquiry into the suggestiveness and necessity of the identification. (*Stovall v.*

*Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972; *People v. Holcomb* (1989), 192 Ill. App. 3d 158, 172, 548 N.E.2d 613.) Showup identifications are permissible and not unnecessarily suggestive where the witness had a clear opportunity to observe the offender during the commission of the offense and where the police are in pursuit of the offender within minutes of the offense. (*People v. Follins* (1990), 196 Ill. App. 3d 680, 689, 554 N.E.2d 345.) Prompt identification procedure insures accuracy by fostering the desirable objectives of fresh, accurate identification that may facilitate the immediate release of an innocent suspect as well as enabling the police to resume their search for the offender. *McKinley*, 69 Ill. 2d at 153, 370 N.E.2d 1040.

In this case, the showup was not unnecessarily suggestive. Both witnesses had an excellent opportunity to observe the offender. Salan and Westbrook saw him from 6 and 10 feet away, respectively, when he came through the outer door, shot his gun at the ceiling, and came through the inner door. In addition, Salan observed the offender from three feet away. Even though he was lying on the floor, Salan was looking up at the offender while speaking with him.

■ Furthermore, the identification was reliable. Factors to consider to determine whether an identification is reliable are: (1) the opportunity the witness had to view the offender at the time of the offense; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the offender; (4) the level of certainty demonstrated by the witness at the identification confrontation; and (5) the length of time between the incident and the identification confrontation. *Neil*, 409 U.S. at 199-200, 34 L. Ed. 2d at 411, 93 S. Ct. at 382; *People v. Slim* (1989), 127 Ill. 2d 302, 307-08, 537 N.E.2d 317.

■ The record supports the finding that any suggestiveness did not affect the reliability of the out-of-court identification by giving rise to a substantial likelihood of misidentification. Salan and Westbrook expressed complete certainty in their unprompted identification of defendant. In addition, the time lapse between the crime and the identification was less than 20 minutes.

As long as there is a positive identification, any discrepancies or omissions in a witness' description merely affect the weight to be given to the identification testimony. (*Slim*, 127 Ill. 2d at 308-09.) The identification can be sufficient even though the witness gives only a general description based on the total impression the offender's appearance made. (*Slim*, 127 Ill. 2d at 309.) The burden is on the defendant to show that the identification procedure was unduly suggestive and conducive to an irreparably mistaken identification. *People v. Kirk* (1979), 76 Ill. App. 3d 459, 469, 394 N.E.2d 1212.

Defendant did not meet his burden. Thus, we find that the trial court did not err in denying defendant's motion to suppress the identifications.

Next, defendant asserts that he was not proven guilty beyond a reasonable doubt because the witnesses did not have sufficient opportunity to view the offender, contradicted each other regarding the color of the offender's shirt, and described the offender as 5 feet 6 inches even though the police report indicated that defendant is 5 feet 11 inches. Defendant also argues that he did not have a gun or proceeds shortly after the robbery. Moreover, defendant maintains that the offenders ran northbound on 69th Street and he was seen walking eastbound in the 6700 block of South Green Street 10 to 15 minutes after the robbery and 10 to 11 blocks from the store.

When the identification of the defendant is at issue, the testimony of a single eyewitness, if positive and credible, is sufficient for a conviction even in the presence of contradictory alibi testimony. (*People v. Louisville* (1992), 241 Ill. App. 3d 772, 776-77, 609 N.E.2d 682.) In assessing identification testimony, a reviewing court cannot substitute its own judgment for that of the trier of fact on questions involving the credibility of witnesses or the weight of the evidence. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43, 535 N.E.2d 889.) It will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

■ The evidence in this case does not create a reasonable doubt. There were two positive identifications, and the trial court determined that the witnesses' testimonies were positive and credible. Moreover, defendant is incorrect in his recitation of the facts. The record indicates that the offenders walked eastbound, not northbound, on 69th Street immediately after the robbery and defendant was picked up on the corner of 67th and Green Streets, which is six to seven blocks northeast of the store. In addition, defendant stated during the sentencing hearing that he is 5 feet 9 inches, making the discrepancy between the description given to the police and defendant's actual height three inches, not six inches. None of the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt.

■ Next, defendant asserts that he was deprived of a fair trial by a police officer's hearsay testimony of a police flash message containing the offender's description. This issue has been waived because defendant did not object to this evidence at trial. In addition, we decline to consider it under the plain error doctrine.

Admission of hearsay identification testimony constitutes plain

error only where it serves as a substitute for courtroom identification or is used to strengthen and corroborate a weak identification. (*People v. Mitchell* (1990), 200 Ill. App. 3d 969, 975, 558 N.E.2d 559.) Neither of these situations exists here and the evidence was not closely balanced.

Moreover, any error would be harmless. Harmless error exists where the evidence is merely cumulative or is supported by a positive identification and other corroborative circumstances. *Mitchell*, 200 Ill. App. 3d at 975.

■ Next, defendant asserts that the trial court erred in finding him guilty of two counts of armed robbery where there was only one taking. The State concedes this issue. (*People v. Mack* (1984), 105 Ill. 2d 103, 135, 473 N.E.2d 880.) Thus, we vacate the conviction on one count of armed robbery.

■ Finally, defendant asserts that his sentence was improper because the trial court relied on its determination that defendant had committed more than one armed robbery.

While defendant failed to object to the sentence, the alleged error clearly affects his fundamental right to liberty and impinges on his right not to be sentenced based on improper factors. (*People v. Martin* (1988), 119 Ill. 2d 453, 458, 519 N.E.2d 884.) Thus, we will review defendant's sentence under the plain error rule. *People v. Burrell* (1992), 228 Ill. App. 3d 133, 147, 592 N.E.2d 453.

There is a presumption that a trial court's sentencing decision is based on proper legal reasoning and that he considered all evidence in mitigation. (*People v. Glass* (1992), 239 Ill. App. 3d 916, 931, 606 N.E.2d 655.) It will not be disturbed on appeal absent a clear abuse of discretion. *People v. Cabrera* (1987), 116 Ill. 2d 474, 494, 508 N.E.2d 708.

After reviewing the record, we cannot say that the trial court abused its discretion in sentencing defendant to 15 years' imprisonment, which is within the statutory range. Armed robbery carries a possible sentence of 6 to 30 years' imprisonment. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3) (West 1992)).) The record indicates that the trial judge considered both mitigation and aggravation presented at argument and the statutory mitigation and aggravation factors. He acknowledged that defendant had only a minor criminal record, which consisted of one felony probation for a nonviolent crime. The judge also cited the serious nature of the armed robbery he committed in this case.

Since one count of armed robbery is vacated, one of the 15-year sentences is vacated. We affirm the other 15-year sentence.

Based on the foregoing, we vacate one count of armed robbery

and its corresponding sentence. We affirm the circuit court's judgment on the other count of armed robbery and its 15-year sentence.

Affirmed in part; vacated in part.

TULLY, P.J., and RIZZI, J., concur.