No. 2--95--0524

               

________________________________________________________________

                                     

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE OF           )  Appeal from the Circuit Court

ILLINOIS,                            )  of Du Page County.

                                )

     Plaintiff-Appellee,             )

                                     )  No. 94--CF--1370

v.                                   )

                                     )

JACQUELINE BRACKETT,                 )  Honorable

                                     )  Ronald B. Mehling,

     Defendant-Appellant.            )  Judge, Presiding.

________________________________________________________________

     JUSTICE COLWELL delivered the opinion of the court:

    

     Defendant, Jacqueline Brackett, appeals her conviction of

aggravated robbery (720 ILCS 5/18--5 (West 1994)).  Defendant

contends that (1) the aggravated robbery statute is

unconstitutionally vague and (2) she was not proved guilty beyond

a reasonable doubt.  We affirm.

     Suzanne Cooke was working at a McDonald's on 75th Street on

June 25, 1994.  At about 11:20 p.m., she heard the tone for the

drive-through window, but no order was placed.  As Cook opened the

window she saw a black female wearing sunglasses and driving an

older, maroon car.  The woman in the car had a coat draped over her

arm.  Underneath the coat "she had her finger pointed like there

was a gun."  The woman announced a robbery.

     Cooke took money from the register and attempted to hand it to

the robber "in a messy pile."  However, the woman instructed her to

put the money in a bag.  Cooke found a souvenir hat from a World

Cup soccer promotion, put the money inside, and placed the hat in

a clear plastic bag.  As the car left McDonald's and turned right

onto 75th Street, Cooke noticed that its license plate number began

with either "KIF" or "KIP."  Cooke reported the robbery to her

manager.  After taking about five minutes to close the restaurant,

the manager called the police.

     Cooke described the robber as wearing a purple shirt and

having short hair pulled back.  She had a gap in her teeth.  The

coat wrapped over the woman's arm was inside-out and had a white

quilted lining.

     Raymond Moeller, a Woodridge police officer, saw a car make an

illegal left turn across two lanes of traffic onto 75th Street,

near the McDonald's, at 11:23 p.m.  He stopped the car, a maroon

Buick with license plate number KIP 536.  He recognized the driver,

a black female wearing a purple shirt, as someone he had stopped

two days before.  After a brief conversation, Moeller decided

against issuing any tickets.

     Four or five minutes later, Moeller received a dispatch about

a robbery at the McDonald's.  The description of the car matched

that of the one he had just stopped.  At about 1:30 a.m., he went

to defendant's address and asked her to accompany him to the police

station.

     Officer Chris Marema responded to the report of the robbery. 

He learned that Officer Themos had located, at a nearby apartment

complex, a car similar to that used in the robbery.  Its license

plate number was KEP 536.  Marema went there and found the car next

to a dumpster.  The police brought Cooke to the complex, where she

identified the car as the one used in the robbery.

     Several officers kept the car under surveillance.  At about

1:20 a.m., a black woman approached the car.  She said that the car

belonged to a friend of hers and provided the officers with an

address in Bolingbrook.  Marema, Moeller, and Detective Bohm went

to the Bolingbrook address and spoke to a woman.  She identified

herself as the mother of the person for whom they were looking. 

She summoned defendant, who agreed to accompany the officers to the

police station.  Moeller recognized defendant as the woman he had

stopped earlier that night.

     The officers took Cooke to the Woodridge police station to

help prepare a computer sketch of the suspect.  After it was

completed, the police informed her that they had someone in

custody.  Cooke thereafter saw defendant behind a window from about

two feet away.  Cooke "pretty much recognized her," but could not

make a positive identification.  Later, the officers had the

suspect read some words from a paper.  Cooke then noticed the gap

in her teeth and positively identified defendant as the robber.

     After Cooke identified defendant in the second showup, Marema

told defendant that she had been identified.  Defendant denied

being involved.  She said that the car had been having mechanical

problems, and she had left it at the Woodridge apartment complex to

have some work done on it.  Her brother had been driving the car

recently, but no one had driven it on the night in question.

     Marema recovered $90 from defendant's purse.  Defendant signed

a consent-to-search form for the car and accompanied the officers

back to the apartment complex, where she gave Marema keys for the

car.  Inside the car, he found a pair of sunglasses similar to the

ones Cooke had described and a note with words to the effect of

"give me your money or I'll blow your head off."

     According to Marema, a dumpster was right next to the driver's

door.  He looked in the dumpster and found a McDonald's promotional

soccer cap inside a plastic bag, and a white quilted jacket. 

Marema returned to the police station, where Cooke identified the

cap, bag, and jacket as the ones connected with the robbery.  No

fingerprints were taken from the recovered items.

     Defendant's mother, Ernestine Brackett, testified that defend-

ant arrived home about 15 minutes before the police arrived.  She

did not know who dropped defendant off, but stated that defendant

does own a maroon Buick.

     Charles Brackett, defendant's brother, testified that he was

at home with his girlfriend, Marla Cosey, on June 25, 1994. 

Defendant arrived at 11:29 p.m.  She did not appear nervous.

     Marla Cosey stated that she had been with defendant earlier in

the day of June 25.  Defendant cashed two checks at Dominick's for

$50 each.  Defendant arrived at the apartment at 11:28 or 11:29, at

the end of "All in the Family."

     Defendant testified that on June 25, 1994, she was driving

east on 75th Street, having left the Taco Bell.  She made an

illegal left turn because the car was "running rough."  When

Officer Moeller stopped her, she said that she was trying to get to

her brother's house.  She said that the sunglasses previously

identified were not hers and that she had cashed two checks earlier

in the day for $50 each.  She did not rob the McDonald's, was not

missing any teeth, and the jacket found in the dumpster was not

hers.

     The trial court found defendant guilty and sentenced her to

five years' imprisonment.  Defendant filed a timely notice of

appeal.

     Defendant's first contention on appeal is that the aggravated

robbery statute is unconstitutionally vague because it contains

insufficiently clear standards for those who enforce the statute

and therefore may lead to arbitrary or discriminatory enforcement. 

The statute in question provides:

          "(a)  A person commits aggravated robbery when he or she

     takes property from the person or presence of another by the

     use of force or by threatening the imminent use of force while

     indicating verbally or by his or her actions to the victim

     that he or she is presently armed with a firearm.  This

     offense shall be applicable even though it is later determined

     that he or she had no firearm in his or her possession when he

     or she committed the robbery."  720 ILCS 5/18--5(a) (West

     1994).

     Defendant contends that enforcement of the statute turns

solely on the arresting officer's interpretation of the word

"indicating."  She argues that "[a]ggravated robbery charges may be

brought when there is simply a suspicion that a person acted in

such a way that one person might believe the actor had a gun but

another person may view the act as innocent conduct."

     According to defendant, the police thus have virtually

unfettered discretion in determining what is an "indication" that

the suspect may have been armed with a gun.  She equates the

statute in question with the ordinances found to be invalid in

Kolender v. Lawson, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855

(1983), and Papachristou v. City of Jacksonville, 405 U.S. 156, 31

L. Ed. 2d 110, 92 S. Ct. 839 (1972).

     Statutes are presumed constitutional.  Therefore, the party

challenging the statute has the burden of clearly establishing its

constitutional infirmity.  People v. Hickman, 163 Ill. 2d 250, 257

(1994).  A court has the duty to construe a statute so that it is

constitutional if it can reasonably be done.  People v. Bales, 108

Ill. 2d 182, 188 (1985).

     Due process requires that a statute must provide sufficiently

definite standards for law enforcement officers and fact finders so

that its application does not depend merely on their private

conceptions.  Hickman, 163 Ill. 2d at 256; People v. Fabing, 143

Ill. 2d 48, 53 (1991).

     The aggravated robbery statute provides sufficiently definite

standards to guide officers and fact finders and to minimize the

danger of arbitrary enforcement.  It is not similar to the statute

and ordinance the supreme court found to be constitutionally infirm

in Kolender and Papachristou.

     In Kolender, the court declared invalid a California statute

that penalized anyone "[w]ho loiters or wanders upon the streets or

from place to place without apparent reason or business and who

refuses to identify himself and to account for his presence when

requested by any peace officer so to do."  Kolender, 461 U.S. at

353 n.1, 75 L. Ed. 2d at 906 n.1, 103 S. Ct. at 1856 n.1, quoting

Cal. Penal Code Ann. §647(e) (West 1970).  The court found that the

statute gave the police "virtually complete discretion *** to

determine whether the suspect has satisfied the statute." 

Kolender, 461 U.S. at 358, 75 L. Ed. 2d at 909, 103 S. Ct. at 1858.

     Similarly, in Papachristou, the court struck down a

Jacksonville city ordinance providing that "[r]ogues and vagabonds,

*** persons wandering or strolling around from place to place

without any lawful purpose or object, habitual loafers, disorderly

persons, *** shall be deemed vagrants ***."  Papachristou, 405 U.S.

at 156 n.1, 31 L. Ed. 2d at 112 n.1, 92 S. Ct. at 840 n.1.  The

court noted that the ordinance furnished "a convenient tool for

'harsh and discriminatory enforcement by local prosecuting

officials, against particular groups deemed to merit their

displeasure.' "  Papachristou, 405 U.S. at 170, 31 L. Ed. 2d at

120, 92 S. Ct. at 847.

     The problem with the vagrancy statutes at issue in Kolender,

Papachristou, and similar cases was that they defined inherently

innocuous conduct and gave the police virtually unlimited

discretion to determine whether to arrest someone for a violation. 

The potential for arbitrary and discriminatory enforcement against

"particular groups" was apparent.

     The statute at issue here, by contrast, defines conduct that

is inherently criminal: "tak[ing] property from the person or

presence of another by the use of force or by threatening the

imminent use of force" (720 ILCS 5/18--5 (West 1994)).  The statute

does not give the police inordinate discretion in determining

whether to make an arrest.  It permits charging the more serious

offense based on the impression the conduct made upon the victim,

not the police officer.

     In this respect, the statute is like many others that define

criminal conduct in terms of the acts' effects upon the victim's

state of mind.  For example, the assault statute defines the

offense as "conduct which places another in reasonable apprehension

of receiving a battery."  720 ILCS 5/12--1 (West 1994).  Obviously,

what constitutes a reasonable apprehension of receiving a battery

is not capable of precise definition.  Although the application of

this standard on a case-by-case basis is not without difficulty

(see generally Soldal v. County of Cook, 923 F.2d 1241, 1250 (7th

Cir. 1991); 2 W. LaFave & A. Scott, Substantive Criminal Law §7.16,

at 316-17 (1986) (hereafter LaFave & Scott)), the statute's

constitutionality has never been seriously challenged.  In People

v. Cavanaugh, 13 Ill. 2d 491, 492 (1958), the supreme court

rejected without comment an argument that the aggravated assault

statute was unconstitutionally vague.

     As two commentators have stated:

     "The criminal law is full of instances in which the

     legislature has passed on to the administrators some

     responsibility for determining the actual boundaries of the

     law, as with the frequent occasions when a jury is asked to

     determine whether the defendant acted 'reasonably' in some

     respect."  1 LaFave & Scott, §2.3(c), at 133.

     Here, the statute is no more vague than necessary to define

the offense.  What constitutes "indicating verbally or by his or

her actions to the victim that he or she is presently armed with a

firearm" is not capable of precise definition and is a question

properly left to be determined by the fact finder on a case-by-case

basis.  We are confident that the danger of arbitrary enforcement

against innocuous conduct has been minimized.

     Moreover, defendant's conduct clearly falls within the

statutory proscription.  When a statute is challenged on grounds

not involving first amendment concerns, it must be examined in

light of the facts of the case at hand.  People v. Ryan, 117 Ill.

2d 28, 34 (1987).  Here, Cooke testified clearly that defendant had

her arm covered with a jacket and held her finger in such a way as

to give the impression that she had a gun under the jacket.

     Defendant's argument that the victim did not mention the

suspected presence of a gun until trial and therefore may have been

coached by the police or prosecutors to tailor her testimony to

bring defendant's conduct within the more serious offense is pure

speculation unsupported by the record.  Cooke testified that she

told her manager "exactly what happened," and, after the police

arrived, "went into more detail with them."  Moreover, the computer

sketch of the suspect generated by the police sketch artist

contains the legend, "Offender's left arm was covered by a jacket,

possibly hiding a weapon.  No weapon was mentioned but was inferred

by the concealment."  Thus, there is no evidence in the record that

Cooke changed her testimony merely to convict defendant of the more

serious offense.

     Defendant next contends that the evidence was insufficient to

establish her guilt beyond a reasonable doubt.  She maintains that

Cooke's identification of her as the robber was tainted because the

two one-person showups were unduly suggestive.  In addition, she

contends that numerous other inconsistencies in and omissions from

the evidence created a reasonable doubt of her guilt.

          Where the sufficiency of the evidence is challenged on

appeal, the relevant question is whether, after viewing all the

evidence in a light most favorable to the prosecution, any rational

trier of fact could have found all the elements of the offense

beyond a reasonable doubt.  People v. Collins, 106 Ill. 2d 237, 261

(1985).  A criminal conviction will not be set aside unless the

evidence is so improbable or unsatisfactory that it creates a

reasonable doubt of defendant's guilt.  People v. Clemons, 277 Ill.

App. 3d 911, 923 (1996).  A reviewing court is not permitted to

substitute its judgment for that of the trier of fact on questions

involving the weight of the evidence, the credibility of the

witnesses, or the resolution of conflicting testimony.  People v.

Campbell, 146 Ill. 2d 363, 375 (1992).

     As part of her reasonable doubt argument, defendant contends

that the one-person showups conducted at the Woodridge police

station were unnecessarily suggestive and tainted the subsequent

identification.  Defendant argues that no exigent circumstances

existed that prevented the police from putting together a lineup.

     The State contends that defendant has waived any issue

regarding the identification procedures because she neither filed

a pretrial motion to suppress the identification nor raised the

issue in her post-trial motion.  Generally, the failure to raise an

issue in a post-trial motion results in the waiver of that issue. 

People v. Enoch, 122 Ill. 2d 176, 186 (1988).  However, to the

extent that the identification of defendant by the only eyewitness

to the crime relates to the sufficiency of the evidence, we will

consider the merits of this issue.

     Although showup procedures such as those used here are not

favored (see, e.g., Stovall v. Denno 388 U.S. 293, 302, 18 L. Ed.

2d 1199, 1206, 87 S. Ct. 1967, 1972 (1967)), courts have approved

them under certain circumstances, such as when a witness had an

excellent opportunity to observe the offender during the offense,

or where prompt identification is necessary for the police to

determine whether to continue their investigation.  People v.

Manion, 67 Ill. 2d 564, 569-70 (1977); People v. Hughes, 259 Ill.

App. 3d 172, 176 (1994).

     The admission of evidence of a showup without more does not

violate due process.  Manson v. Brathwaite, 432 U.S. 98, 106, 53 L.

Ed. 2d 140, 148-49, 97 S. Ct. 2243, 2249 (1977); Neil v. Biggers,

409 U.S. 188, 198, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382

(1972).  The critical question is whether, under the totality of

the circumstances, the identification is reliable.  See Manson, 432

U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253.  The factors

to be considered include the opportunity of the witness to view the

criminal at the time of the crime, the witness' degree of

attention, the accuracy of his or her prior description of the

suspect, the level of certainty demonstrated at the confrontation,

and the time between the crime and the confrontation.  Neil, 409

U.S. at 199-200, 34 L. Ed. 2d at 411, 93 S. Ct. at 382.

     Applying these factors to the present case, we conclude that

the identification was sufficiently reliable.  Cooke had an

opportunity to observe the robber for a fairly long time while a

conversation took place and Cooke searched for a bag in which to

place the money.  She testified that she was only two to three feet

away from the robber and that she did not take her eyes off the

suspect during that time.

     Moreover, defendant closely matched Cooke's original

description of the suspect.  Cooke was almost certain of her

identification after the initial showup and was completely certain

following the second observation during which she observed the gap

in defendant's teeth.  Finally, the identification procedures

occurred approximately two hours after the offense.  The totality

of the circumstances demonstrates that Cooke's identification was

reliable.

     Defendant points to several other discrepancies in the

evidence that she claims create a reasonable doubt of her guilt. 

For example, she notes that the witnesses gave several different

versions of the license number of the car involved in the robbery

and of defendant's car and that Cooke failed to notice a sunroof or

a bumper sticker on defendant's car.  Also, defendant contends that

it is contrary to human experience to have closed the store prior

to calling the police to report the robbery, which is what Cooke

testified was done.

     In light of the overwhelming evidence of defendant's guilt,

these minor discrepancies simply do not create a reasonable doubt. 

Cooke clearly and consistently identified defendant as the robber. 

Her car matched Cooke's description of the car involved.  Officer

Moeller testified that he stopped defendant near the scene of the

robbery within minutes after it occurred.  Sunglasses identified as

having been worn by the robber were found in defendant's car.  A

hat and plastic bag taken in the robbery, and a jacket worn by the

robber, were found in a dumpster right next to where defendant's

car was parked.  Any inconsistencies or improbabilities in the

testimony were for the consideration of the trial court as the

finder of fact.  Taken as a whole, the evidence was sufficient to

establish defendant's guilt beyond a reasonable doubt.

     The judgment of the circuit court of Du Page County is

affirmed.

     Affirmed.

     DOYLE and THOMAS, JJ., concur.