# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Burney*, 2011 IL App (4th) 100343

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY L. BURNEY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0343 |
| Filed | December 27, 2011 |
| Modified upon denial of rehearing | January 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for residential burglary and criminal trespass to a residence, his conviction for the latter was vacated under the one-act, one-crime rule, and his conviction for the former was upheld over various objections, including those based on hearsay, the sufficiency of the evidence, the prosecution's closing argument and ineffective assistance of counsel, and the cause was remanded for further proceedings on defendant's ability to pay the recoupment order and the issuance of an amended sentencing judgment. |
| Decision Under Review | Appeal from the Circuit Court of Jersey County, No. 08-CF-168; the Hon. Eric S. Pistorius, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions for further proceedings. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Karen Munoz, and Colleen Morgan, all of State Appellate Defender's Office, of Springfield, for appellant. |
| | Benjamin L. Goetten, State's Attorney, of Jerseyville (Patrick Delfino, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion. |
| | Justice Steigmann concurred in the judgment and opinion. |
| | Justice Cook specially concurred in the judgment, with opinion. |

**OPINION**

¶ 1    In April 2010, a jury found defendant, Timothy J. Burney, guilty of residential burglary and criminal trespass to a residence. In May 2010, the trial court sentenced him to prison.

¶ 2    On appeal, defendant argues (1) the State failed to prove him guilty beyond a reasonable doubt, (2) he was denied a fair trial, (3) his criminal-trespass-to-a-residence conviction must be vacated under the one-act, one-crime rule, (4) the trial court erred in ordering him to reimburse the public defender, (5) the court failed to award him credit against his fine, and (6) the court improperly assessed various fees. We affirm in part, vacate in part, and remand for further proceedings.

¶ 3                    I. BACKGROUND

¶ 4    In August 2008, the State charged defendant by information with one count of residential burglary (count I) (720 ILCS 5/19-3(a) (West 2008)), alleging he knowingly and without authority entered into the dwelling place of Geraldine Krause with the intent to commit a theft therein. The State also charged defendant with one count of criminal trespass to a residence (count II) (720 ILCS 5/19-4(a)(2) (West 2008)), alleging he knowingly and without authority entered Krause's residence at a time when defendant knew that one or more persons were present in the residence. A third charge of criminal trespass to a motor vehicle was later dismissed. Defendant pleaded not guilty.

¶ 5    In July 2009, defendant filed a motion to suppress evidence, claiming the police took him to the victim's home and placed a white towel around his neck to see if the victim recognized him. Defendant argued the show up was improper and extremely prejudicial. At the hearing on the motion, the State agreed the presentation of defendant to the victim was improper. The court granted the motion.

¶ 6        The State, however, sought to introduce evidence that the victim recognized defendant's voice when he said, "You don't know me. I don't know you" at the show up. The trial court suppressed the voice identification, finding the improper show up made the voice identification inadmissible.

¶ 7        Defendant also filed a motion to suppress the evidence of a white towel found near where he was arrested as well as a blue plastic grocery bag found on the victim's property. Defendant argued the State could not lay a proper foundation for entry of the towel and plastic bag into evidence. Further, he argued the plastic bag was not made available to him prior to its spoliation by the State. The trial court denied the motion to suppress.

¶ 8        At defendant's jury trial, Geraldine Krause took the stand and gave her version of the incident. Before she finished testifying, the State asked to call a deputy regarding some evidentiary issues. Defense counsel objected, wanting to cross-examine Krause. The trial court stated defendant would have the opportunity to do so when Krause was recalled. The State indicated it intended to call two witnesses to establish a chain of custody. When it was discovered that one of the previously undisclosed witnesses was a family member of a juror, the court declared a mistrial.

¶ 9        In August 2009, defendant filed a motion to suppress evidence gathered during the use of a police tracking dog. Defendant argued the deputy handling the dog would be unable to lay a proper foundation and testify as to why the dog may or may not track human scent or whose scent was being tracked. The State conceded Illinois law prohibited admission of dog-tracking evidence but submitted testimony as to the dog's ability. The trial court excluded all evidence of the dog tracking. The court did allow the State to introduce evidence of the discovery of defendant, finding officers would have inevitably found him during a search of the area.

¶ 10        The State filed a motion to reconsider the suppression of the show up and the voice identification. The trial court advised the State that if defendant's statement was made prior to the police placing a towel on his shoulders during the show up, the statement would be admissible. Defense counsel contended the police did not mention defendant made a statement at the show up. The State also indicated defendant asked officers what he was being charged with. When an officer stated he was being charged with trespass to property, defendant responded, "Well you can't get me for burglary or home invasion." The court found this statement was not subject to suppression.

¶ 11        At a subsequent hearing, Jersey County sheriff's deputy Kevin Ayres testified he responded to the report of a residential burglary on August 28, 2008. Once defendant was taken into custody, he was brought over to the victim. As the victim approached, defendant said "you don't know me and I don't know you." Ayres said the statement was made prior to a towel being placed on defendant. The trial court allowed the statements to be introduced.

¶ 12        In January 2010, the State filed a motion to have Krause declared unavailable as a witness and to use her prior in-court testimony. The motion indicated Krause was elderly and in poor health, and her doctor was concerned the stress of testifying could exacerbate her condition. The trial court denied the motion, finding defendant did not have a prior opportunity to cross-examine Krause.

¶ 13   In March 2010, the State filed a motion to declare Krause's statements to law enforcement as nontestimonial. The State claimed Krause was able to give a partial description and told Deputy Ayres the suspect fled on foot. The trial court found Krause's statements were nontestimonial because they were made in the course of an ongoing police emergency. The court also found the statements were admissible as excited utterances.

¶ 14   In April 2010, defendant's jury trial commenced. Jackie Huett testified she resided in a mobile home on Bethany Church Road in August 2008. At the time, she was in the process of tearing down the mobile home. Defendant offered to help her for money. Since defendant was going to stay at the mobile home for a day or two, Huett and defendant went to Shop 'n Save for sandwiches, chips, and beer. Huett stated the supplies were placed in plastic bags.

¶ 15   Deputy Ayres testified he responded to a call of a residential burglary at 10:15 p.m. Upon meeting Krause, Ayres found her to be "very upset" and shaking. She told him she heard a noise at the door and then a man forced his way inside. The man had a blue plastic bag over his head and was wearing blue jeans and no shirt. Krause also stated the man smelled of an alcoholic beverage. The man wanted her car keys. She told him to leave or she would call the police. When she attempted to call the police, the man pulled the phone out of her hand and threw it on the floor. Krause then grabbed a broom and advised the man to leave.

¶ 16   Ayres searched the property and eventually found defendant in a trailer with no walls approximately a quarter of a mile away. At the time, defendant was wearing blue jeans and no shirt. Ayres could see cans of opened and unopened alcohol on the floor along with a white towel. Krause had told Ayres the suspect wore a "greyish white sweatshirt" draped over his shoulders. Ayres approached defendant, who appeared intoxicated, and told him to put his hands up. After defendant was taken into custody, Ayres searched outside Krause's residence and found a blue plastic shopping bag. When defendant was brought over for an identification, he said "you don't know me and I don't know you" to Krause. As defendant was being placed back into the squad car, he asked Ayres what he was being charged with. When Ayres stated it was criminal trespass, defendant responded "you can't get residential burglary or home invasion on me."

¶ 17   On cross-examination, Deputy Ayres stated defendant was rolling a cigarette when he approached the trailer. Ayres did not find defendant to be winded or wet, although there was a light mist at the time.

¶ 18   Jersey County sheriff's chief deputy Kevin Klass testified he processed the crime scene for fingerprints and footwear evidence. He identified a white towel and a blue plastic bag that were collected as evidence. Klass stated the bag was ripped on both sides, and it was possible the holes were used for eye cutouts.

¶ 19   Defendant exercised his constitutional right not to testify. Following closing arguments, the jury found defendant guilty of residential burglary and criminal trespass to a residence.

¶ 20   In May 2010, the trial court sentenced defendant to four years in prison on the residential-burglary conviction and two years on the criminal-trespass-to-a-residence conviction with both sentences to run concurrently to each other. This appeal followed.

¶ 21                    II. ANALYSIS

¶ 22             A. Sufficiency of the Evidence

¶ 23     Defendant argues the State's evidence was insufficient to convict him beyond a reasonable doubt. We disagree.

¶ 24     "When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Singleton*, 367 Ill. App. 3d 182, 187, 854 N.E.2d 326, 331 (2006). This standard of review applies when reviewing the sufficiency of evidence in all criminal cases, including cases based on direct or circumstantial evidence. *People v. Pollock*, 202 Ill. 2d 189, 217, 780 N.E.2d 669, 685 (2002). "Circumstantial evidence alone is sufficient to sustain a conviction where it satisfies proof beyond a reasonable doubt of the elements of the crime charged." *Pollock*, 202 Ill. 2d at 217, 780 N.E.2d at 685.

¶ 25     The trier of fact has the responsibility to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence. *People v. Jackson*, 232 Ill. 2d 246, 281, 903 N.E.2d 388, 406 (2009). "[A] reviewing court will not reverse a criminal conviction unless the evidence is so unreasonable, improbable[,] or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Rowell*, 229 Ill. 2d 82, 98, 890 N.E.2d 487, 496-97 (2008).

¶ 26     "The elements of the crime of residential burglary are entry into a building without authority, or remaining after authority to enter has been withdrawn, with the intent to commit a felony or theft." *People v. Campbell*, 146 Ill. 2d 363, 375, 586 N.E.2d 1261, 1266 (1992). A person commits criminal trespass to a residence when, without authority, he enters or remains within a residence. *People v. Austin*, 216 Ill. App. 3d 913, 916, 576 N.E.2d 505, 507 (1991).

¶ 27     In this case, Deputy Ayres responded to a call of a residential burglary and found an upset and shaking Krause in her residence. Krause told him the man who forced his way inside was wearing blue jeans and no shirt and had a greyish-white sweatshirt draped over his shoulders, had a blue plastic bag over his head, and smelled of an alcoholic beverage. Ayres searched the property and surrounding area and found defendant in a trailer wearing blue jeans but no shirt. Ayres stated defendant appeared intoxicated. Ayres found a white towel in the trailer, which he believed fit the description of the grey sweatshirt described by Krause.

¶ 28     When Ayres brought defendant back to Krause for a possible identification, defendant stated "you don't know me and I don't know you" upon his approach. Later, as he was being placed in the squad car, he asked Ayres what he was being charged with. When Ayres stated it was criminal trespass, defendant responded, "you can't get residential burglary or home invasion on me."

¶ 29     The evidence in this case, although circumstantial, was of such a character to prove defendant guilty of the crime of residential burglary and criminal trespass to a residence. Defendant was found within minutes of the crime and only a short distance from Krause's residence. He was dressed in a similar fashion as mentioned by the victim, and the white towel could have been mistaken for the sweatshirt draped over his shoulders during the

commission of the crimes. Deputy Ayres stated defendant appeared intoxicated. Defendant also made several incriminating statements. The statement he made to Krause can be seen as seeking to influence an eyewitness and victim, an attempt to intimidate her not to identify him as the perpetrator. Further, defendant's statement to Deputy Ayres that he could not "get residential burglary or home invasion" charges on him can be seen as an admission that he had been on Krause's property but believed he had only had committed a lesser crime than residential burglary or home invasion. Viewing the evidence in the light most favorable to the prosecution, we find the jury could reasonably have found defendant guilty of the crimes charged beyond a reasonable doubt.

¶ 30                                          B. Fair Trial

¶ 31     Defendant argues he was denied his right to a fair trial, claiming (1) the trial court allowed Deputy Ayres to recite hearsay statements of the nontestifying victim, (2) the court improperly found testimony regarding his arrest was admissible as inevitable discovery, (3) the prosecutor made improper remarks during closing arguments, and (4) defense counsel was ineffective. The State argues these issues are forfeited because defendant failed to file a posttrial motion setting forth his allegations of error. Defendant asks this court to review the issues as a matter of plain error.

¶ 32     The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

Under both prongs of the plain-error analysis, the burden of persuasion remains with the defendant. *People v. Lewis*, 234 Ill. 2d 32, 43, 912 N.E.2d 1220, 1227 (2009). As the first step in the analysis, we must determine whether any error occurred at all. *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010).

¶ 33                              1. *Victim's Hearsay Statements*

¶ 34     Defendant argues the trial court erred in admitting the victim's hearsay statements, claiming they were not excited utterances. Moreover, defendant argues the statements were testimonial in nature and their admission violated his sixth-amendment right to confrontation as discussed in *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 547 U.S. 813 (2006). We disagree.

¶ 35     When analyzing the admissibility of out-of-court statements into evidence, we must first determine "whether the statement passes muster as an evidentiary matter." *In re E.H.*, 224 Ill. 2d 172, 179, 863 N.E.2d 231, 235 (2006). If the statements are found to be admissible as an evidentiary matter, then we will consider any constitutional objections such as *Crawford*-

based confrontation claims. *E.H.*, 224 Ill. 2d at 179-80, 863 N.E.2d at 235.

¶ 36    Prior to defendant's second trial, the State filed a motion to have Krause declared unavailable and to use her prior in-court testimony as substantive evidence. The trial court denied the motion, finding defendant did not have the prior opportunity to cross-examine Krause. Thereafter, the State filed a motion to declare Krause's statements to law enforcement nontestimonial. The court found the statements were nontestimonial because they were made in the course of an ongoing police emergency and they also amounted to excited utterances. The court allowed Ayres to testify to Krause's statements as to what happened, what the suspect looked like, and where the suspect may have gone.

¶ 37                    a. *Excited-Utterance Exception*

¶ 38    " 'Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and it is generally inadmissible due to its lack of reliability unless it falls within an exception to the hearsay rule.' " *People v. Caffey*, 205 Ill. 2d 52, 88, 792 N.E.2d 1163, 1187 (2001) (quoting *People v. Olinger*, 176 Ill. 2d 326, 357, 680 N.E.2d 321, 336 (1997)). For a hearsay statement to be admissible under the excited utterance or spontaneous declaration exception, "there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence." *People v. Sutton*, 233 Ill. 2d 89, 107, 908 N.E.2d 50, 62 (2009). When determining whether a hearsay statement falls under the excited-utterance exception, courts look at the totality of the circumstances. *Sutton*, 233 Ill. 2d at 107, 908 N.E.2d at 62. This "analysis involves consideration of several factors, including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest." *Sutton*, 233 Ill. 2d at 107, 908 N.E.2d at 62.

¶ 39    An event can be found sufficiently startling to a declarant, even in the absence of a physical injury, considering the totality of the circumstances. *People v. Connolly*, 406 Ill. App. 3d 1022, 1025, 942 N.E.2d 71, 76 (2011). "While the amount of time necessary for fabrication may vary greatly, the critical inquiry with regard to time is whether the statement was made while the declarant was still affected by the excitement of the event." *Connolly*, 406 Ill. App. 3d at 1025, 942 N.E.2d at 76. That a statement may be made in response to an inquiry does not destroy spontaneity. *Connolly*, 406 Ill. App. 3d at 1025, 942 N.E.2d at 76. Moreover, "[a]n excited utterance can still be made even after having spoken previously to another after the event." *Connolly*, 406 Ill. App. 3d at 1026, 942 N.E.2d at 76; see also *People v. House*, 141 Ill. 2d 323, 385, 566 N.E.2d 259, 287 (1990) ("that the declarant may have previously spoken to another is merely a factor to consider in determining admissibility").

¶ 40    A trial court's evidentiary rulings on hearsay testimony and any applicable exceptions are reviewed under an abuse-of-discretion standard. *Caffey*, 205 Ill. 2d at 89, 792 N.E.2d at 1188. Thus, a court's hearsay ruling will be reversed only if it is an abuse of discretion. *People v. Bailey*, 409 Ill. App. 3d 574, 583, 948 N.E.2d 690, 702 (2011). " 'An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable,

or where no reasonable person would take the view adopted by the trial court.' " *People v. Patrick*, 233 Ill. 2d 62, 68, 908 N.E.2d 1, 5 (2009) (quoting *People v. Hall*, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000)).

¶ 41    In this case, the totality of the circumstances supports the trial court's finding that Krause's statements to Deputy Ayres were excited utterances. Ayres testified he received the call from dispatch at 10:14 p.m. and arrived on the scene at 10:15 p.m. He described Krause as being "very pale," "very upset," and shaking. He asked her if she was okay. He then asked her what happened. She described the noise and the man who forced his way inside the house, and stated that he wore jeans, no shirt, and a plastic bag over his head. She also stated he smelled of an alcoholic beverage.

¶ 42    Given Krause's advanced years, and the fact that she was home alone in a rural area in the dark of night, the event can be seen as sufficiently startling to produce a spontaneous statement. Even though Krause was not injured, Deputy Ayres found her to be upset and shaking. Not only were the statements made while Krause was still affected by the excitement of the event, but there was also little passage of time between the event, Krause's phone call to her daughter, and the arrival of Ayres that would permit fabrication of the statements. See *People v. Gwinn*, 366 Ill. App. 3d 501, 518, 851 N.E.2d 902, 917 (2006) (finding a statement made to police 15 minutes after the incident was admissible as an exited utterance as the victim was still under shock of the event). That Krause responded to Ayres' question as to what happened did not destroy the spontaneity of the statements. Moreover, the statements were made on the scene and related the circumstances of the incident. We find the trial court did not abuse its discretion in finding the statements fell within the excited-utterance exception to the hearsay rule.

¶ 43                                    b. *Testimonial Statements*

¶ 44    As noted, not only does defendant argue the victim's statements were not excited utterances, but he also claims they were testimonial statements made only in response to police questioning. Citing *Crawford* and *Davis*, defendant argues he was denied his sixth-amendment right to confront witnesses against him as Krause was not subject to cross-examination at the first trial and did not testify at the second trial.

¶ 45    The confrontation clause in the sixth amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. The sixth-amendment confrontation clause applies to the states through the fourteenth amendment. *People v. Williams*, 238 Ill. 2d 125, 142, 939 N.E.2d 268, 277 (2010); U.S. Const., amend. XIV. A claim alleging a violation of the confrontation clause involves a question of law that is reviewed *de novo*. *Williams*, 238 Ill. 2d at 141, 939 N.E.2d at 277; see also *Sutton*, 233 Ill. 2d at 112, 908 N.E.2d at 65 (whether a statement is testimonial is a question of law).

¶ 46    Prior to *Crawford*, the Supreme Court had held that an unavailable witness's out-of-court statement satisfied the sixth amendment and was admissible at trial so long as the statement had "adequate 'indicia of reliability.' " *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *overruled by Crawford*, 541 U.S. at 61-64. In *Crawford*, the Supreme Court abandoned this reliability

framework and held the confrontation clause bars out-of-court testimonial statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68-69.

¶ 47 The Supreme Court did not articulate a comprehensive definition of "testimonial" but found that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68. In *Davis*, 547 U.S. at 821, the Court reiterated that the confrontation clause has no application to nontestimonial statements. The Court then attempted to shed light on what it meant by "testimonial" statements by providing as follows:

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822.

¶ 48 A plurality of our supreme court, after considering *Crawford* and *Davis*, developed a framework to determine whether an out-of-court statement is testimonial in *People v. Stechly*, 225 Ill. 2d 246, 281-82, 870 N.E.2d 333, 355 (2007). A testimonial statement was found to be one that was (1) made in a solemn fashion and (2) is intended to establish a particular fact. *Stechly*, 225 Ill. 2d at 281-82, 870 N.E.2d at 355; see also *Sutton*, 233 Ill. 2d at 111, 908 N.E.2d at 64 (reaffirming the holding in *Stechly*). "In general, a statement is testimonial if the declarant is acting in a manner analogous to a witness at trial, describing or giving information regarding events that have already occurred." *Sutton*, 233 Ill. 2d at 111, 908 N.E.2d at 64 (citing *Stechly*, 225 Ill. 2d at 282, 870 N.E.2d at 355). When a statement is the product of police questioning, "the objective intent of the questioner is determinative." *Sutton*, 233 Ill. 2d at 111, 908 N.E.2d at 64.

¶ 49 In *Michigan v. Bryant*, ___ U.S. ___, 131 S. Ct. 1143 (2011), the United States Supreme Court revisited the "ongoing emergency" rule enunciated in *Davis*. In *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1150, police officers responded to a dispatch that a man had been shot. Upon arriving at the scene, they found a man, with a gunshot wound to his abdomen, who appeared to be in great pain and spoke with difficulty. *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1150. The police asked him what happened, who shot him, and where the shooting occurred. The victim told the officers that "Rick" shot him at around 3 a.m. outside of the defendant's home. The conversation with police lasted 5 to 10 minutes until medical personnel arrived. The victim died later that day. At the defendant's trial, police officers testified to what the victim told them. A jury found the defendant guilty.

¶ 50 In the Supreme Court of Michigan, the defendant argued the victim's statements to police were testimonial under *Crawford* and *Davis* and thus inadmissible. *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1151. The state court concluded the circumstances indicated the primary purpose of the questioning was to establish facts of a past event and not to enable the police to meet an ongoing emergency. The court reversed the defendant's conviction and remanded for a new trial.

¶51 On appeal, the United States Supreme Court considered whether the confrontation clause barred the victim's statements. *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1152. The Court considered the "ongoing emergency" jurisprudence in the context "involving a victim found in a public location, suffering from a fatal gunshot wound, and a perpetrator whose location was unknown at the time the police located the victim." *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1156. In analyzing confrontation-clause claims, the Court offered the following instructions:

"[The court] should determine the 'primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs. The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation." *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1162.

¶52 The Supreme Court considered the context of the police questioning and found the statements, made by a man lying in a gas station parking lot with a gunshot wound to his abdomen, were nontestimonial because the primary purpose of the statements was to respond to an ongoing emergency rather than with a future prosecution in mind. *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1165. The Court noted "the existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry; rather, the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.' " *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1165 (quoting *Davis*, 547 U.S. at 822). The Court found the police were responding to a report that a man had been shot, and given the officers did not know the location of the shooter or the circumstances in which the crime occurred, questions of " 'what happened,' " " 'who shot you,' " and " 'where did the shooting take place,' " "were the exact type of questions necessary to allow the police to ' "assess the situation, the threat to their own safety, and possible danger to the potential victim" ' and to the public." *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1165-66 (quoting *Davis*, 547 U.S. at 832, quoting *Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County*, 542 U.S. 177, 186 (2004)). Considering the circumstances of the encounter, along with the victim's statements and the actions of the police, the Court found the primary purpose of the interrogation was to assist the police in meeting an ongoing emergency. *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1166-67. Thus, the Court found the victim's identification and description of the shooter, along with the location of where the shooting took place, were not testimonial hearsay and the confrontation clause did not bar their admission at the defendant's trial. *Bryant*, ___ U.S. at ___, 131 S. Ct. at 1167.

¶53 With these cases in mind, we find the statements Krause made to Deputy Ayres were not testimonial and thus did not violate the confrontation clause. Krause made the statements in response to an ongoing emergency. At the time the statements were made, the suspect had not been found. A man who had barged into an elderly woman's home demanding her car keys was still on the loose, and it is reasonable to conclude the police interrogation of Krause sought to bring an end to the situation. Deputy Ayres also found Krause to be upset and

-10-

shaking, making it likely she did not have the primary purpose to establish or prove past events relevant to a future prosecution.

¶ 54   Nothing indicates Deputy Ayres engaged in a structured interrogation in this case. Krause's responses focused on what happened and what the intruder was wearing. Although Krause's statements were made in her house, obviously a more sterile and controlled environment than the parking lot of the gas station found in *Bryant*, the informality of the encounter suggests Deputy Ayres was seeking to discern the facts of the ongoing emergency. This was not a situation where the officer, with pen in hand after the emergency had ended and reports were being contemplated or prepared, asked the victim, "Okay, Ms. Krause, let's start again from the beginning and tell me what happened." See *Sutton*, 233 Ill. 2d at 118-19, 908 N.E.2d at 68-69 (finding the officer's question, asked in an ambulance after the crime scene had been secured, of " 'can you please tell me again exactly what happened' " and the victim's responsive narrative of the events were not directed at addressing the ongoing emergency but went toward establishing a particular fact). Krause's statements also do not fall within the "solemn" nature contemplated by *Stechly*. The circumstances in which Krause made her statements were not similar to those given by a witness on direct examination or a victim at a police-station interview.

¶ 55   Because the circumstances of the encounter as well as the statements and actions of Krause and Deputy Ayres objectively indicate the "primary purpose of the interrogation" was "to enable police assistance to meet an ongoing emergency" (*Davis*, 547 U.S. at 822), Krause's statements as to what happened and the description of the suspect were not testimonial hearsay. Thus, the confrontation clause did not bar their admission at defendant's trial. We find no error.


¶ 56                     2. *Motion To Suppress and Inevitable Discovery*

¶ 57   Defendant argues the trial court erred in denying his motion to suppress and finding testimony regarding his arrest was admissible as inevitable discovery since the police had not implemented any search for defendant other than deploying the tracking dog. We find the trial court appropriately prohibited testimony on the dog-tracking evidence.

¶ 58   Here, defendant filed a motion to suppress evidence gathered during the dog-tracking portion of the investigation and the results thereof. Our supreme court has held "bloodhound evidence is inadmissible to establish any factual proposition in a criminal proceeding in Illinois." *People v. Cruz*, 162 Ill. 2d 314, 369-70, 643 N.E.2d 636, 662 (1994). The State filed an answer, relying in part on the inevitable-discovery doctrine. The trial court granted the motion to suppress as it applied to the dog tracking. However, the court found the State established by a preponderance of the evidence that defendant would have been discovered, given the close proximity and short time frame between the crime and the officer arriving on the scene. The court also found "the officer's testimony as to the normal police procedures of canvassing the immediate area" was reasonable and defendant's location was subject to inevitable discovery.

¶ 59   Although the parties and the trial court were correct in noting that dog-tracking evidence is inadmissible at trial, we find defendant's motion to suppress was an inappropriate vehicle

to raise the issue. "The motion to suppress is the device by which the issue of whether evidence should be excluded because obtained in violation of the Fourth Amendment is ordinarily raised in a criminal case." 6 Wayne R. Lafave, Search and Seizure § 11.2, at 34-35 (4th ed. 2004). In a motion to suppress, a defendant "has the burden of proving the search and seizure were unlawful." *People v. McQuown*, 407 Ill. App. 3d 1138, 1143, 943 N.E.2d 1242, 1246 (2011). We note a motion to suppress necessarily invokes the exclusionary rule because the motion seeks to suppress evidence that would otherwise be admissible but is not because of police misconduct. See *Davis v. United States*, ___ U.S. ___, ___, 131 S. Ct. 2419, 2426 (2011) (stating the sole purpose of the exclusionary rule is to deter fourth-amendment violations).

¶ 60    As stated, dog-tracking evidence is not admissible at trial. However, the use of dogs to track suspects, just like the use of other matters in police investigations that would be inadmissible at trial–such as informers' tips, polygraph tests, and the like–is not only not improper, it is entirely appropriate. Accordingly, the motion to suppress the dog-tracking evidence was the wrong vehicle with which to raise this issue, and the trial court should have denied the motion on its face once it became clear that no allegation of police misconduct was made in the motion. Accordingly, the court's use of the doctrine of inevitable discovery to overcome the "problems" in this case was unwarranted.

¶ 61    Instead of filing a motion to suppress, defendant should have filed a motion *in limine* to bar evidence of the dog tracking that occurred in this case. Based on the legal authority defendant cited to the trial court, which the State conceded, the court would have granted the motion and directed the State to make sure no evidence regarding dog tracking was offered at trial. As it happened, Deputy Ayres would have testified that after he spoke to Krause, he conducted a search for the person who broke into her house and found defendant at the trailer a short distance from Krause's home. Thus, the doctrine of inevitable discovery would have no application.

¶ 62    We note we may affirm the trial court's judgment on any basis established by the record. *People v. Keys*, 375 Ill. App. 3d 459, 461, 874 N.E.2d 577, 579 (2007). Here, the trial court appropriately kept out the dog-tracking evidence. Thus, we need not address the motion to suppress or the inevitable-discovery doctrine.

¶ 63                            3. *Closing Argument*

¶ 64    Defendant argues the prosecutor made improper statements during closing arguments, including defining "reasonable doubt," claiming a conviction could rest on defendant's failure to prove his innocence, citing facts not in evidence, and inflaming the passions of the jurors. We find no plain error.

¶ 65    "Every defendant is entitled to fair trial free from prejudicial comments by the prosecution." *People v. Young*, 347 Ill. App. 3d 909, 924, 807 N.E.2d 1125, 1137 (2004). "A prosecutor has wide latitude in making a closing argument and is permitted to comment on the evidence and any fair, reasonable inferences it yields." *People v. Glasper*, 234 Ill. 2d 173, 204, 917 N.E.2d 401, 419 (2009). A reviewing court "will find reversible error only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was

-12-

denied or that the verdict resulted from the error." *People v. Runge*, 234 Ill. 2d 68, 142, 917 N.E.2d 940, 982 (2009).

¶ 66    On the matter of reasonable doubt, defendant takes issue with the following statements made by the prosecutor during closing argument:

"Let's talk a little bit about beyond a reasonable doubt. That's the standard we have to prove here. That's the State's burden of proof. Some of you may have been on a civil jury where it's different. Now what is [']beyond a reasonable doubt[']?] It's difficult. It's difficult to understand and comprehend. I have trouble with it myself. Okay. The only thing I can tell you with any certainty is that [']beyond a reasonable doubt['] does not mean [']beyond all doubt.['] That's not the standard. That's unrealistic and that's not the standard the State has to prove here today. [']Beyond a reasonable doubt.['] Keep those words in mind and I'll try to explain a little bit about what that is. Now [defense counsel] is gonna [*sic*] do her job and her job is to inject doubt into your mind. She's gonna [*sic*] inject doubt. What you have to ask yourself is that doubt reasonable. I have little doubt that some of you may have doubt in your mind about this case. If there is no doubt we wouldn't be here today. Some of you have doubt. Is that doubt reasonable? Is it reasonable to think that there's another shirtless man wearing blue jean[s] running around rural Jersey County near Bethany Church Road that broke into that home? Is it possible? It's possible sure that's what you're thinkin[g]. But is it reasonable to believe that? I would say not. It's not reasonable. That's not a reasonable hypothesis of what happened here. Ask yourself that question. Ask yourself is that reasonable doubt[?] I would say no and ask yourself if that's enough doubt for you to let this man go today. I don't believe it is."

The prosecutor summed up as follows:

"And the State feels that we have proven those [counts] beyond a reasonable doubt. Beyond that standard. Don't raise that bar higher than it needs to be ladies and gentlemen for the State to prove. It's not beyond all doubt. And I say this to jurors at the conclusion of the my [*sic*] closing statements[,] generally [']when you go into that jury box[,] jury room and you deliberate[,] don't leave you[r] most important tool in the jury box and that's common sense.['] Common sense will get you to the conclusion of this case. Common sense will tell you that it's not reasonable to think someone else did this. Common sense will convict this man of residential burglary and trespass to residence."

¶ 67    Attempts to explain the reasonable-doubt standard have been disfavored by the courts because "no matter how well-intentioned, the attempt may distort the standard to the prejudice of the defendant." *People v. Keene*, 169 Ill. 2d 1, 25, 660 N.E.2d 901, 913 (1995). "However, both the prosecutor and defense counsel are entitled to discuss reasonable doubt and to present his or her view of the evidence and to suggest whether the evidence supports reasonable doubt." *People v. Laugharn*, 297 Ill. App. 3d 807, 811, 698 N.E.2d 219, 222 (1998).

¶ 68    Here, the prosecutor sought to discuss the reasonable-doubt standard, but he did not diminish the State's burden of proof or shift the burden to defendant. "A prosecutor may argue that the State does not have the burden of proving the guilt of the defendant beyond

-13-

*any* doubt, that the doubt must be a reasonable one." (Emphasis in original.) *People v. Carroll*, 278 Ill. App. 3d 464, 467, 663 N.E.2d 458, 461 (1996). We find no error in the prosecutor's statements on reasonable doubt.

¶ 69     Defendant argues the prosecutor cited facts not in evidence, such as that Krause could see well and had a clear mind but had a serious heart condition, which was exacerbated by the incident. The prosecutor also claimed defendant did not have a driver's license and attributed the lack of footprint matches to the fact that Krause's family and grandchildren were around her house.

¶ 70     "Prosecutors may not argue assumptions or facts not contained in the record." *Glasper*, 234 Ill. 2d at 204, 917 N.E.2d at 419-20. Moreover, prosecutors "cannot use closing argument simply to 'inflame the passions or develop the prejudices of the jury without throwing any light upon the issues.' " *People v. Wheeler*, 226 Ill. 2d 92, 128-29, 871 N.E.2d 728, 748 (2007) (quoting *People v. Halteman*, 10 Ill. 2d 74, 84, 139 N.E.2d 286, 293 (1956)). "If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted." *Wheeler*, 226 Ill. 2d at 123, 871 N.E.2d at 745.

¶ 71     While the evidence failed to show Krause had a heart condition or that defendant did not have a driver's license, the prosecutor's argument cannot be said to have contributed to defendant's conviction. Although defendant claims no testimony related to Krause's family, other than that she told Deputy Ayres that she telephoned her daughter after the incident, Huett testified Krause's children and grandchildren used to drop by Krause's home. The prosecutor could thus reasonably respond to defense counsel's question to the jury as to how footprints were found on Krause's vehicle and why they did not match defendant's prints. Reading the prosecutor's argument in its entirety, and considering the trial court instructed the jurors that closing arguments were not evidence, we find no plain error.

¶ 72     Defendant, however, contends the prosecutor used these facts to inflame the passions of the jury and specifically cites the following argument:

"What we do have in this case is a victim. We've got Geraldine Krause. Now I believe 89 years old. She was a victim at the time. I can't imagine how terrified you'd be if somebody kicks in your door wearing a mask and demanding car keys when you're home alone. That's something she's got to live with the rest of her life. What you can do here today is hold this man accountable for what he did. You can't take that away from Geraldine[,] that's something that's gonna [*sic*] be there. But you could help that out by finding this man guilty today. And that's your responsibility."

¶ 73     We find the prosecutor's comment that Krause was a victim of a traumatic event was a reasonable inference from the evidence. See *People v. Tannahill*, 152 Ill. App. 3d 882, 888, 504 N.E.2d 1283, 1288 (1987) (finding the prosecutor's reference to the victim being traumatized was a reasonable inference from the evidence). The prosecutor's arguments cannot be said to have inflamed the passions of the jurors. Instead, the prosecutor sought to hold defendant accountable for his crimes. We conclude the prosecutor's statements did not rise to the level of plain error.

¶ 74                                    4. *Assistance of Counsel*

¶ 75        Defendant argues defense counsel was ineffective for failing to file a motion for speedy trial, not objecting to improper evidence or argument, and not filing a motion for a new trial. We disagree.

¶ 76        Claims of ineffective assistance of counsel are evaluated under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 687). Prejudice is established when a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Evans*, 209 Ill. 2d at 219-20, 808 N.E.2d at 953 (citing *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 192 Ill. 2d 93, 107, 735 N.E.2d 616, 626 (2000).

¶ 77        Defendant argues counsel was ineffective for not filing a demand for a speedy trial and thus his statutory speedy-trial rights were violated. A defendant has a right to a speedy trial under the United States and Illinois Constitutions (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8), as well as under Illinois statute (725 ILCS 5/103-5 (West 2008)). However, "the statutory right to a speedy trial is not the precise equivalent of the constitutional right." *People v. Staten*, 159 Ill. 2d 419, 426, 639 N.E.2d 550, 554 (1994). To establish a violation of the statutory right to a speedy trial, a defendant must show that he "has not been tried within the period set by statute and that defendant has not caused or contributed to the delays." *Staten*, 159 Ill. 2d at 426, 639 N.E.2d at 554. "Proof of the constitutional violation, by contrast, requires consideration of the length of the delay in trial, the reasons for the delay, the defendant's assertion of the speedy[-]trial right, and prejudice to the defendant caused by such delay." *People v. Exson*, 384 Ill. App. 3d 794, 797, 896 N.E.2d 844, 847 (2008) (citing *Staten*, 159 Ill. 2d at 426, 639 N.E.2d at 554).

¶ 78        In his brief on appeal, defendant argues his statutory speedy-trial rights were violated. However, when "deciding whether a defendant's speedy-trial rights have been infringed upon after a mistrial has been declared, we are concerned with the constitutional right to a speedy trial (U.S. Const., amend. VI), rather than the statutorily prescribed time limitations set out in section 103-5 of the Code of Criminal Procedure of 1963." *People v. Wills*, 153 Ill. App. 3d 328, 335, 505 N.E.2d 754, 759 (1987). Because defendant did not argue his constitutional right to a speedy trial was violated until his reply brief, he has forfeited review of this issue. See *Sellers v. Rudert*, 395 Ill. App. 3d 1041, 1046, 918 N.E.2d 586, 591 (2009) ("an appellant forfeits points not raised in the initial brief and cannot argue them for the first time in the reply brief").

¶ 79        Defendant also argues trial counsel was ineffective for failing to object to the State's use

of hearsay without a limiting instruction. Specifically, defendant takes issue with Deputy Ayres' testimony that he responded to Krause's home after hearing a police dispatch that "a gentleman *** just broke his way into a residence out on Bethany Church Road."

¶ 80     As noted, hearsay testimony is an out-of-court statement offered to prove the truth of the matter asserted. *People v. Banks*, 237 Ill. 2d 154, 180, 934 N.E.2d 435, 449 (2010). Although hearsay is generally inadmissible in evidence, "testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not 'hearsay.' " *People v. Williams*, 181 Ill. 2d 297, 313, 692 N.E.2d 1109, 1118 (1998). Moreover, "[t]he admission of an out-of-court statement that is not offered to prove the truth of the matter asserted but rather to explain the investigatory procedure followed in a case is proper." *Banks*, 237 Ill. 2d at 181, 934 N.E.2d at 449. "The content of a police radio message is not hearsay if it is offered for the limited purpose of explaining the reason and manner in which the police conducted their investigation." *People v. Louisville*, 241 Ill. App. 3d 772, 781, 609 N.E.2d 682, 688 (1992).

¶ 81     Defendant argues Ayres' hearsay testimony was prejudicial because it went toward proving that a break-in had occurred. However, "[t]he determination of whether a statement constitutes inadmissible hearsay does not focus upon the substance of the statement, but rather the purpose for which the statement is being used." *Williams*, 181 Ill. 2d at 313, 692 N.E.2d at 1119. Here, the radio dispatch explained why Ayres proceeded to the victim's residence. It had the nonhearsay purpose of establishing its effect on the listener, rather than being admitted for the truth of the matter asserted. The State did not elicit the testimony to prove an element of the offense. Moreover, we note the prosecutor did not mention the substance of the dispatch in his opening or closing remarks or in questioning other witnesses. As the statement did not amount to inadmissible hearsay, defense counsel cannot be said to have been ineffective for failing to object. We find no error. Because we find no plain or prejudicial error in the issues raised by defendant, his claim that he received ineffective assistance of counsel is without merit.

¶ 82                          C. One-Act, One-Crime Rule

¶ 83     Defendant argues the trial court erred in entering convictions for both residential burglary and criminal trespass to a residence where he was only alleged to have made one entry into the home. While noting defendant failed to raise this issue in a posttrial motion, the State notes we can review this issue under the plain-error doctrine and agrees the conviction for criminal trespass to a residence should be vacated under the one-act, one-crime rule.

¶ 84     Our supreme court has held a violation of the one-act, one-crime rule results in a surplus conviction and sentence and affects the integrity of the judicial process, and thus satisfies the second prong of the plain-error doctrine. *People v. Harvey*, 211 Ill. 2d 368, 389, 813 N.E.2d 181, 194 (2004). Thus, we will consider whether defendant's criminal-trespass-to-a-residence conviction must be vacated under the one-act, one-crime rule.

¶ 85     In *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844 (1977), our supreme court declared a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act.

"Decisions following *King* have explained that the one-act, one-crime doctrine involves a two-step analysis. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). First, the court must determine whether the defendant's conduct involved multiple acts or a single act. Multiple convictions are improper if they are based on precisely the same physical act. Second, if the conduct involved multiple acts, the court must determine whether any of the offenses are lesser-included offenses. If an offense is a lesser-included offense, multiple convictions are improper. *Rodriguez*, 169 Ill. 2d at 186." *People v. Miller*, 238 Ill. 2d 161, 165, 938 N.E.2d 498, 501 (2010).

¶ 86    In the case *sub judice*, the State charged defendant with residential burglary, a Class 1 felony (720 ILCS 5/19-3(b) (West 2008)), alleging he knowingly and without authority entered Krause's residence with the intent to commit a theft therein. The State also charged him with criminal trespass to a residence, a Class 4 felony (720 ILCS 5/19-4(b)(2) (West 2008)), alleging he, without authority, entered Krause's residence knowing that one or more persons were present. Both charges consisted of the same singular act of entering Krause's residence. As a single act was involved, multiple convictions were improper. "[I]f a defendant is convicted of two offenses based upon the same single physical act, the conviction for the less serious offense must be vacated." *People v. Johnson*, 237 Ill. 2d 81, 97, 927 N.E.2d 1179, 1189 (2010). Accordingly, the Class 4 felony offense of criminal trespass to a residence must be vacated here. We remand for issuance of an amended judgment of sentence.

¶ 87                        D. Public-Defender Reimbursement

¶ 88    Defendant argues the trial court erred in imposing a fee for reimbursement of his court-appointed counsel without first conducting a hearing to determine his ability to pay. We agree, and the State concedes.

¶ 89    Section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Code) provides, in part, as follows:

"Whenever *** the court appoints counsel to represent a defendant, the court may order the defendant to pay to the Clerk of the Circuit Court a reasonable sum to reimburse either the county or the State for such representation. In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant under [s]ection 113-3 of this Code and any other information pertaining to the defendant's financial circumstances which may be submitted by the parties." 725 ILCS 5/113-3.1(a) (West 2008).

Section 113-3.1 requires the trial court to conduct a hearing into a defendant's financial circumstances and find an ability to pay before ordering him to pay reimbursement for his appointed counsel. *People v. Love*, 177 Ill. 2d 550, 555, 687 N.E.2d 32, 35 (1997). "[T]he defendant must (1) have notice that the trial court is considering imposing a payment order under section 113-3.1 of the Code and (2) be given the opportunity to present evidence or argument regarding his ability to pay and other relevant circumstances." *People v. Barbosa*, 365 Ill. App. 3d 297, 301, 849 N.E.2d 152, 154 (2006). "The hearing is required even where a cash bail bond has been posted, because the existence of a bond is not conclusive evidence

of an ability to pay." *People v. Schneider*, 403 Ill. App. 3d 301, 303, 933 N.E.2d 384, 387 (2010).

¶ 90    In this case, the public defender was appointed to represent defendant in August 2008. In November 2008, the trial court noted a $5,000 cash bond had been posted and told the public defender to keep track of her time for possible reimbursement. At the May 2010 sentencing hearing, the court directed the public defender to prepare an affidavit as to her fees that would be taken from the bond. After sentencing, the public defender filed an affidavit of time expended, and the court set the public-defender fee at $3,150.

¶ 91    Here, the trial court failed to conduct an adequate *Love* hearing. Although it could be said defendant was on notice that reimbursement was a possibility, he was not given the opportunity to present evidence or argument regarding his ability to pay. No affidavit of defendant's assets and liabilities was on file following the convictions to shed light on his ability to pay. The court's failure to follow the procedures required by section 113-3.1 of the Code requires us to vacate the reimbursement order and remand for a hearing on the matter. See *Barbosa*, 365 Ill. App. 3d at 302, 849 N.E.2d at 155.

¶ 92                              E. Credit Against Fine

¶ 93    Defendant argues he should have received credit against his $200 DNA-analysis assessment for the time he spent in pretrial custody. The State agrees. We do not.

¶ 94    Section 110-14(a) of the Code states, "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110-14(a) (West 2008). A "defendant is entitled to one day of credit for each day (or portion thereof) that he spends in custody prior to sentencing, including the day he was taken into custody." *People v. Ligons*, 325 Ill. App. 3d 753, 759, 759 N.E.2d 169, 174 (2001). "The issue of monetary credit against a defendant's fine cannot be waived and may be raised for the first time on appeal." *People v. Sulton*, 395 Ill. App. 3d 186, 188, 916 N.E.2d 642, 644 (2009).

¶ 95    Here, the trial court ordered defendant to pay a $200 DNA-analysis assessment. Section 5-4-3(a) of the Unified Code of Corrections (730 ILCS 5/5-4-3(a) (West 2008)) requires anyone convicted of a felony to submit blood, saliva, or tissue specimens to the Illinois State Police. If a defendant must submit a specimen under section 5-4-3(a), the trial court must impose "an analysis fee" of $200. 730 ILCS 5/5-4-3(j) (West 2008).

¶ 96    A " ' "fine" is a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense.' " *People v. Jones*, 223 Ill. 2d 569, 581, 861 N.E.2d 967, 975 (2006) (quoting *People v. White*, 333 Ill. App. 3d 777, 781, 776 N.E.2d 836, 839 (2002)). A "fee" is "a charge that 'seeks to recoup expenses incurred by the state,' or to compensate the state for some expenditure incurred in prosecuting the defendant." *People v. Graves*, 235 Ill. 2d 244, 250, 919 N.E.2d 906, 909 (2009) (quoting *Jones*, 223 Ill. 2d at 582, 861 N.E.2d at 975).

¶ 97    Both the State and defendant cite this court's decision in *People v. Long*, 398 Ill. App. 3d 1028, 1034, 924 N.E.2d 511, 516 (2010), where we found the $200 DNA-analysis

assessment constituted a fine, even though it was labeled a fee. Subsequent to that decision, however, the supreme court issued its opinion in *People v. Marshall*, 242 Ill. 2d 285, 950 N.E.2d 668 (2011). In that case, the court considered whether a defendant who, because of a prior conviction, had previously submitted a DNA sample for testing and paid the DNA fee could be required, on a subsequent conviction, to submit another DNA sample and pay another DNA fee. *Marshall*, 242 Ill. 2d at 287-88, 950 N.E.2d at 670-71. The court found the defendant was not subject to the additional DNA fee. *Marshall*, 242 Ill. 2d at 303, 950 N.E.2d at 679. The court found "the primary purpose of section 5-4-3 is the creation of a criminal DNA database of the genetic identities of recidivist offenders." *Marshall*, 242 Ill. 2d at 291, 950 N.E.2d at 672. Moreover, the court noted the DNA-analysis fee " 'is intended to cover the costs of the DNA analysis.' " *Marshall*, 242 Ill. 2d at 296, 950 N.E.2d at 676 (quoting *People v. Rigsby*, 405 Ill. App. 3d 916, 919, 940 N.E.2d 113, 115 (2010)). The court concluded the DNA-analysis fee is "paid only when the actual extraction, analysis and filing of a qualified offender's DNA occurs." *Marshall*, 242 Ill. 2d at 297, 950 N.E.2d at 676.

¶ 98    In *People v. Guadarrama*, 2011 IL App (2d) 100072, ¶ 13, the Second District, relying on *Marshall*, found the DNA-analysis fee is not imposed as punishment but "is used to cover the costs incurred in collecting and testing a DNA sample that is taken from a defendant convicted of a qualifying offense." As the DNA-analysis assessment constitutes a fee, not a fine, the Second District found the defendant in that case was not entitled to offset the assessment with sentence credit. *Guadarrama*, 2011 IL App (2d) 100072, ¶ 13; see also *People v. Stuckey*, 2011 IL App (1st) 092535, ¶ 36 (stating it would no longer follow *Long* in light of *Marshall* and concluding the DNA-analysis assessment is a fee that is not subject to presentence incarceration credit); *People v. Anthony*, 408 Ill. App. 3d 799, 809, 951 N.E.2d 507, 517 (2011) (pre-*Marshall* case finding the DNA-analysis assessment was a fee and not subject to presentence credit).

¶ 99    Considering *Marshall*, we find the cases holding the DNA-analysis assessment constitutes a fee and not subject to sentence credit are on sound footing. Accordingly, defendant's $200 DNA-analysis assessment is a fee that is not subject to offset by presentence credit.

¶ 100                              F. Assessed Fees

¶ 101   Defendant argues the trial court erred in ordering him to pay a $700 "clerk" fee and a $100 "court" fee. The State argues defendant has forfeited this issue by not raising it in a postsentencing motion. Defendant, however, contends a fine or fee imposed without proper statutory authority is void *ab initio* and may be attacked at any time. See *People v. Hunter*, 358 Ill. App. 3d 1085, 1094, 831 N.E.2d 1192, 1198-99 (2005). We agree with defendant.

¶ 102   As to the merits of this issue, defendant argues it is unclear under what authority the $700 "clerk" fee and the $100 "court" fee were assessed. Both defendant and the State make conflicting arguments as to what statutes apply, and the trial court order and circuit clerk record fail to cite statutory authority for these fees. As we cannot tell from the record if the fees were properly imposed, we remand this issue so the trial court can reconsider these fees in a manner consistent with this opinion.

¶ 103                                    III. CONCLUSION

¶ 104       For the reasons stated, we vacate in part defendant's criminal-trespass-to-a-residence conviction, and remand for further proceedings on defendant's ability to pay the recoupment order, a reconsideration of the assessed fees, and for issuance of an amended sentencing judgment; we otherwise affirm. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 105       Affirmed in part and vacated in part; cause remanded with directions for further proceedings.

¶ 106       JUSTICE COOK, specially concurring:

¶ 107       I concur in the majority decision, but I disagree that "[b]ecause defendant did not argue his constitutional right to a speedy trial was violated until his reply brief, he has forfeited review of this issue." *Supra* ¶ 78.

¶ 108       One of the points argued by defendant in his opening appellant brief was that "Timothy Burney was denied his right to the effective assistance of counsel because counsel failed to file a demand for a speedy trial on Burney's behalf." Defendant referred to the constitutional right to a speedy trial in that brief. Defendant was entitled to respond, in his reply brief, to the State's argument, in its appellee brief, that the real issue here was the constitutional right to a speedy trial, not the statutory right. Ill. S. Ct. R. 341(j) (eff. Sept. 1, 2006) ("The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee ***.").